

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 22

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. |
| | § | |
| EUGENIO D. LEO | § | **3-09 CR 206-K** |
| JODY L. MEYER | § | |

### INDICTMENT
(Wire Fraud, 18 U.S.C. § 1343; Mail Fraud, 18 U.S.C. § 1341;
and Aiding and Abetting, 18 U.S.C. § 2)

Introduction

At all times material to this Indictment:

1.  RTY Trading Group, doing business as Compass Financial, was a commodities brokerage firm located in Richardson, Texas, and was involved in interstate commerce by buying and selling commodities. Compass Financial was owned and operated by S.M.

2.  A commodities broker is an individual who executes orders to buy or sell commodity contracts on behalf of clients and charges them a commission.

3.  **Eugenio D. Leo** was an employee at Compass Financial, in Dallas, Texas, from in or about December 2003 to in or about November 2004.

4.  **Jody L. Meyer** was the girlfriend of **Leo** and was involved in **Leo's** business activities.

5. Gerard Van Weyenbergh was the owner and operator of Van Weyenbergh Fine Arts. During 2004, as part of his business, Van Weyenbergh bought and sold paintings, as well as appraised and authenticated art.

6. A Power of Attorney is an authorization to act on someone else's behalf in a legal or business matter. The person authorizing the other to act is the principal or beneficiary, and the one authorized to act is the agent or fiduciary. The fiduciary duty is a legal relationship of confidence or trust between the principal and the agent. The agent has a fiduciary duty to act in the best interest of the principal or beneficiary, which includes being honest with the principal and acting in accordance with the principal's direction.

7. Arinfi Anstalt (Arinfi), also known as Arinfi Establishment, was a company set up in Liechtenstein at the direction of **Leo** for the benefit of K.P. K.P. directed that funds be moved to Arinfi, for the purpose of making a short-term museum loan. **Leo,** acting in his fiduciary role as the agent for K.P., controlled and directed the expenditure and movement of funds to and from Arinfi through Sandro Fenyo (Fenyo).

8. Vatan Anstalt (Vatan), also known as Vatan Establishment, was a company set up in Liechtenstein at the direction of **Leo** for the benefit of **Leo**. **Leo** controlled and directed the expenditure and movement of funds to and from Vatan through Fenyo. Fenyo adminstered the business of Vatan, under a power of attorney, as **Leo** directed.

9. Sandro Fenyo was the Director of Manfid S.A., with an office located in Lugano, Switzerland. During 2004 at Manfid, Fenyo executed orders from **Leo** involving

matters with Arinfi and Vatan. **Leo** hired and appointed Fenyo as the director of Arinfi and Vatan.

10. Artemis Fine Arts was a company located in Dallas, Texas, specializing in art packing, shipping, and storage.

11. Art Capital Group was a company located in New York, offering financial and consulting services to assist art owners in creating liquidity from art assets. Art Capital Group also provided loans to art owners, using the art as the sole asset to secure the loan.

### The Scheme

12. Beginning in or about February 2004 and continuing through in or about November 2004, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **Leo** and **Meyer** devised and intended to devise a scheme and artifice to defraud K.P. of property, namely approximately $3 million USD by committing mail fraud, a violation of 18 U.S.C. § 1341; wire fraud, a violation of 18 U.S.C. § 1343; and aiding and abetting, a violation of 18 U.S.C. § 2.

13. The scheme involved **Leo** proposing a plan to K.P. of making short-term loans to museums in Europe; the loans would be secured by pieces of artwork worth significantly more than the loan value. At **Leo**'s request, K.P. would and did provide **Leo** a Power of Attorney so that **Leo** could make the necessary arrangements for the short-term loan. **Leo** would and did report to K.P. that K.P.'s loan was repaid plus interest.

14. In truth and in fact, **Leo** made material misrepresentations to facilitate the scheme to defraud K.P. **Leo** used his (**Leo's**) authority under a Power of Attorney from

K.P. to act contrary to K.P.'s instructions, contrary to K.P.'s best interest, and for **Leo's** own benefit. **Leo** would and did:

> a) purchase art, using K.P.'s money, and then sell that art to K.P.;
>
> b) use art owned by K.P. as collateral to obtain a loan for himself (**Leo**); and
>
> c) use K.P.'s money for himself to pay $93,000 **Leo** owed.

15. In truth and in fact, after **Leo** obtained K.P.'s confidence and approval to make a short-term loan to a museum in Europe, **Leo** contacted Van Weyenbergh to assist in locating art. While Van Weyenbergh was identifying art pieces available in Europe, **Leo** told K.P. that a company would need to be created in Europe to facilitate the short-term museum loan. **Leo** directed K.P. to complete a Power of Attorney giving **Leo** authority to create companies and bank accounts, conduct transactions, and essentially act in K.P.'s name in financial and fiduciary matters. With K.P.'s knowledge, **Leo** contacted Fenyo in Switzerland to create Arinifi; K.P. was the beneficial owner of Arinfi.

16. At the same time that **Leo** directed Fenyo to create Arinfi, **Leo** also directed Fenyo to create another company, Vatan, which was for the benefit of **Leo**. K.P. had no knowledge that **Leo** was the beneficial owner of Vatan.

17. To participate in the short-term loan **Leo** had proposed, K.P. wired $3 million to Arinfi. K.P. sent this money at the direction of **Leo** and because of representations made by **Leo**.

18. In or about March 2004, **Leo**, Van Weyenbergh, and S.M. traveled to Paris, France to view some of the art. Ultimately, Van Weyenbergh identified 16 pieces of art,

and purchased them with money provided by **Leo**. The money **Leo** gave to Van Weyenbergh for the art purchases came from K.P. through Arinfi.

19. Van Weyenbergh, through a purchase agreement, sold those 16 pieces of art to Vatan for approximately $2.2 million. Vatan then sold these 16 pieces of art to Arinfi for $3 million. **Leo** never disclosed to K.P. that **Leo** had purchased the art and profited from the transaction.

20. Over the next approximately eight months, **Leo** regularly misrepresented to K.P. and others that the short-term loan had been issued, was being repaid, and was ultimately repaid in full with interest. **Leo** provided false documents to support the misrepresentations, including an altered bank statement showing that Arinfi had approximately $7 million in its bank account, when in fact, it had approximately $2 million.

21. To facilitate the scheme and artifice to defraud, on or about May 28, 2004, **Leo** directed that the previously purchased art be shipped from Van Weyenbergh's possession in California to Artemis Fine Arts in Dallas, Texas. **Leo** directed the shipment of art to Dallas to reinforce the illusion of a legitimate art loan. Shipping the art to Dallas was designed to lull K.P., providing K.P. a sense of security, postponing inquiries, and making the transaction less suspect.

22. Beginning in April 2004, **Leo**, aided and abetted by **Meyer**, began negotiations with Art Capital Group to use K.P.'s art as collateral for a loan. **Leo** and **Meyer** represented to Art Capital Group that Vatan was the owner of the art, when in

truth and in fact, **Leo** and **Meyer** knew that the art was owned by K.P. through Arinfi. During these negotiations, **Meyer** corresponded with Art Capital Group through interstate wire communications, emails.

23.   To facilitate the scheme and artifice to defraud, on or about June 29, 2004, **Leo** directed that the previously purchased art be shipped from Artemis Fine Arts in Dallas, Texas to Art Capital Group in New York, New York.  **Leo** directed the shipment of art to New York to reinforce the appearance of a legitimate art loan; **Leo** had represented to K.P. that the short-term loan had been repaid and consequently, the art was being shipped back to the museum in Europe, via New York.  Shipping the art to New York was designed to provide K.P. a sense of security, postpone inquiries, and make the transaction less suspect.  Shipping the art to New York also enabled **Leo** and **Meyer** to use K.P.'s art as collateral for a loan of approximately $300,000.  Art Capital Group agreed to this collateral-backed loan based on **Leo's** and **Meyer's** misrepresentations that Vatan (**Leo**) owned the art.

24.   In affecting the scheme and artifice to defraud, **Leo** obtained access to K.P.'s money through the Power of Attorney.  Needing money for his own personal use, **Leo** and **Meyer** contacted Fenyo and instructed Fenyo to wire $93,000 from Arinfi's bank account in Liechtenstein to a lawyer in Illinois, United States.  This use of K.P.'s money was not approved or directed by K.P.  Neither **Leo** nor **Meyer** told K.P. that his money was being used for the personal benefit of **Leo**.

## Manner and Means of Executing the Scheme

25. To accomplish the scheme and artifice, defendant **Leo** did the following:

    a) Make representations to K.P. about the loan process and financial return.

    b) Obtain K.P.'s money, or K.P.'s Power of Attorney thus allowing **Leo** access to K.P.'s money.

    c) Use K.P.'s money differently than K.P. approved or directed.

    d) Misrepresent to K.P. the true use of K.P.'s money.

    e) Materially omit information about the true use of K.P.'s money.

    f) Misrepresent to K.P. the return on K.P.'s loan or the profits K.P. earned.

    g) Misrepresent the true ownership of art.

    h) Obtain money for defendant's own personal use.

26. **Meyer** aided and abetted the execution of **Leo's** scheme.

<u>Count 1</u>
(Wire Fraud, 18 U.S.C. § 1343)

On or about March 12, 2004, in the Northern District of Texas and elsewhere, the defendant **Eugenio D. Leo**, for the purpose of executing the scheme and artifice to defraud, did knowingly transmit and cause to be transmitted in interstate commerce, by means of a wire communication, certain signs and signals, that is a document entitled Special Power of Attorney, sent by facsimile from Compass Financial in Richardson, Texas to Sandro Fenyo in Lugano, Switzerland.

In violation of 18 U.S.C. § 1343.

<u>Count 2</u>
(Mail Fraud, 18 U.S.C. § 1341)

On or about May 28, 2004, in the Northern District of Texas and elsewhere, the defendant **Eugenio D. Leo**, for the purpose of executing the scheme and artifice to defraud, did knowingly cause to be delivered by interstate carrier a crate containing art pieces, such crate being delivered to Artemis Fine Arts, 2944 Congressman Lane, Dallas, Texas 75220, the place at which was directed to be delivered by **Leo.**

In violation of 18 U.S.C. § 1341.

Count 3
(Mail Fraud and Aiding and Abetting, 18 U.S.C. §§ 1341 and 2)

On or about June 29, 2004, in the Northern District of Texas and elsewhere, the

defendants **Eugenio D. Leo** and **Jody Meyer**, aided and abetted by each other, for the

purpose of executing the scheme and artifice to defraud, did knowingly cause to be

delivered by interstate carrier a crate containing art pieces, such crate being delivered to

Art Capital Group, 980 Madison Avenue, New York, New York 10021, the place at

which was directed to be delivered by **Leo.**

In violation of 18 U.S.C. §§ 1341 and 2.

<u>Count 4</u>
(Wire Fraud and Aiding and Abetting, 18 U.S.C. §§ 1343 and 2)

On or about November 10, 2004, in the Northern District of Texas and elsewhere,

the defendant **Eugenio D. Leo** and **Jody Meyer**, for the purpose of executing the scheme

and artifice to defraud, did knowingly transmit and cause to be transmitted in interstate

and foreign commerce, by means of a wire communication, certain signs and signals, that

is an email dated November 10, 2004, from **Meyer** to Sandro Fenyo, instructing Fenyo to

wire $93,000.

In violation of 18 U.S.C. §§ 1343 and 2.

A TRUE BILL

GRAND JURY FOREPERSON

JAMES T. JACKS
ACTING UNITED STATES ATTORNEY

DAYLE ELIESON
Assistant United States Attorney
Texas Bar No. 00790639
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: 214.659.8600
Facsimile: 214.767.2846
Email: dayle.elieson@usdoj.gov

Indictment - Page 11 of 11

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL 2 2 2009

CLERK, U.S. DISTRICT COURT
By _____
Deputy

UNITED STATES OF AMERICA

v.

EUGENIO LEO (1)
JODY L. MEYER (2)   **3-09 CR - 2 0 6 - K**

INDICTMENT

18 U.S.C. § 1343
Wire Fraud

18 U.S.C. § 1341
Mail Fraud

18 U.S.C. §§ 1341 and 2
Mail Fraud and Aiding & Abetting

18 U.S.C. §§ 1343 and 2
Wire Fraud and Aiding & Abetting

4 Counts

---

A true bill rendered:

-------------------------------------------------------------------------

DALLAS                                                          FOREPERSON

Filed in open court this _____ day of _____, A.D. 2009.

-------------------------------------------------------------------------

                                                                   Clerk

Issue Arrest Warrants for EUGENIO LEO and JODY L. MEYER

-------------------------------------------------------------------------

UNITED STATES ~~DISTRICT/~~MAGISTRATE JUDGE

Misc. No. 3-06-MC0108-D

*Criminal Case Cover Sheet*

# 3-09 CR 206-K

Revised 3/5/98

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

ORIGINAL

### Related Case Information

Superseding Indictment: ☐ Yes ☒ No   New Defendant: ☒ Yes ☐ No

Pending CR Case in NDTX: ☐ Yes ☒ No   If Yes, number:

Search Warrant Case Number _N/A_

R 20 from District of _N/A_

Magistrate Case Number: _N/A_

**1.   Defendant Information**

Juvenile: ☐ Yes ☒ No

If Yes, Matter to be sealed:

☐ Yes   ☒ No

Defendant Name _____ EUGENIO LEO (1)

Alias Name _____

Address _____

County in which offense was committed: _____ Dallas

RECEIVED
BY
JUL 22 2009
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**2.   U.S. Attorney Information**

Dayle Elieson _____   Bar # _00790639_

**3.   Interpreter**

☐ Yes   ☒ No   If Yes, list language and/or dialect: _____

**4.   Location Status**

Issue Arrest Warrant

☐   Already in Federal Custody _____ in _____
☐   Already in State Custody
☐   On Pretrial Release

**5.   U.S.C. Citations**

Total # of Counts as to This Defendant:   4   ☐ Petty   ☐ Misdemeanor   ☒ Felony

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 U.S.C. § 1343 | Wire Fraud | 1 |
| 18 U.S.C. § 1341 | Mail Fraud | 2 |
| 18 U.S.C. §§ 1341 and 2 | Mail Fraud and Aiding & Abetting | 3 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding & Abetting | 4 |

Date _7/20/09_ _____   Signature of AUSA: _____

*Criminal Case Cover Sheet*

# 3-09 CR 206-K

Revised 3/5/98

ORIGINAL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| Related Case Information |
|---|
| Superseding Indictment: ☐ Yes ☒ No    New Defendant: ☒ Yes ☐ No |
| Pending CR Case in NDTX: ☐ Yes ☒ No  If Yes, number: |
| Search Warrant Case Number N/A |
| R 20 from District of N/A |
| Magistrate Case Number: N/A |

1. **Defendant Information**

   Juvenile: ☐ Yes ☒ No

   If Yes, Matter to be sealed:

   ☐ Yes   ☒ No

   Defendant Name _____ JODY L. MEYER (2) _____

   Alias Name _____

   Address _____

   _____

   County in which offense was committed: _____ Dallas _____

   RECEIVED
   BY
   JUL 22 2009
   CLERK, U.S. DISTRICT COURT
   NORTHERN DISTRICT OF TEXAS

2. **U.S. Attorney Information**

   Dayle Elieson _____    Bar # 00790639 _____

3. **Interpreter**

   ☐ Yes   ☒ No    If Yes, list language and/or dialect: _____

4. **Location Status**

   Issue Arrest Warrant

   ☐ Already in Federal Custody _____ in _____
   ☐ Already in State Custody
   ☐ On Pretrial Release

5. **U.S.C. Citations**

   Total # of Counts as to This Defendant:   2    ☐ Petty   ☐ Misdemeanor   ☒ Felony

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 U.S.C. §§ 1341 and 2 | Mail Fraud and Aiding & Abetting | 3 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding & Abetting | 4 |

Date 7/20/09 _____    Signature of AUSA: _____