ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
FEB 28 201...
CLERK, U.S. DISTRICT COURT
By _____
    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § | No. 3:09-CR-206-K |
| EUGENIO D. LEO (1) | § § | |

## FACTUAL RESUME

Eugenio D. Leo, (Leo), defendant, George Becker, the defendant's attorney, and the United States of America (the government), agree as follows:

### ELEMENTS - COUNT ONE
Wire Fraud
(Violation of 18 U.S.C. § 1343)

First:   The defendant knowingly created a scheme or artifice to defraud;

Second:   The defendant acted with a specific intent to defraud;

Third:   The defendant used interstate wire communication facilities or caused another to use interstate wire communication facilities for the purpose of carrying out the scheme; and

Fourth:   The scheme to defraud employed false material representations.

### STIPULATION OF FACTS

During at least the time period November 2003 through December 2004, R.T.Y. Trading Company, doing business as Compass Financial, was a commodity futures brokerage located in Richardson, Texas, in the Northern District of Texas. In or around November 2003, Compass Financial hired the defendant, Eugenio D. Leo, as a

commodities broker.

In February 2004, K.P. and L.P., husband and wife, were clients of Compass Financial. In or around February 2004, K.P. and L.P. instructed Compass Financial to sell certain precious metal assets owned by K.P. and L.P. In the course of arranging for and executing the sale of these assets, Leo proposed to K.P. and L.P. that they invest a portion of the proceeds of the sale, $3,000,000, in a short-term, asset-backed loan to a museum in Europe. Leo represented to K.P. that the terms of the loan required the borrower to pay back the loan plus an additional $900,000 in interest in 90 days, and to secure the loan with artwork from the museum valued in excess of the loan. K.P. and L.P. agreed to the proposed investment.

On or about March 8, 2004, Leo, acting on behalf of K.P. and L.P., completed the sale of the precious metal assets. The proceeds of the sale were deposited in an account in the Bank of Nova Scotia for the benefit of K.P. and L.P.

At Leo's request, on March 12, 2004, K.P. executed a Power of Attorney giving Leo the power to create companies and bank accounts, conduct transactions, and to act in K.P.'s name in all financial matters related to the loans. On that same date, Leo, for the purpose of executing a scheme and artifice to defraud K.P. and L.P. of property or something of value, knowingly caused Compass Financial to send a copy of the Power of Attorney by facsimile to Lugano, Switzerland to Sandro Fenyo, a resident of Switzerland doing business as Manfid, S.A. Acting under this Power of Attorney, Leo contracted with

Fenyo to establish an entity in Liechtenstein for the benefit of K.P. and L.P. to accomplish the loan. Shortly thereafter, at the direction of Leo, Fenyo established Arinfi Anstalt ("Arinfi") for the benefit of K.P. and L.P, and opened an account in a Liechtenstein bank, the Liechtensteinische Landesbank ("LLB"), in the name of Arinfi. At or about the same time, Leo, through Fenyo, registered another entity in Liechtenstein, Vatan Anstalt ("Vatan"), for his own benefit, and opened an account in the name of Vatan in LLB. Leo did not inform K.P. or L.P. that he had established and/or registered Vatan, and that he was the beneficial owner of Vatan.

On or about March 18, 2004, Compass Financial wired $4,000,000 from the Bank of Nova Scotia account in the name of K.P. and L.P. to the Arinfi account in LLB. K.P. authorized the transfer of these funds to Arinfi based on Leo's representations that $3,000,000 of the funds would be used to make a short-term loan to a specified museum, secured by artwork appraised at a value greater than the loan.

At some time prior to March 2004, Leo recruited Gerard Van Weyenbergh, an art dealer based in California, to appraise the artwork designated as collateral for the loan. In March 2004, Leo and Van Weyenbergh met with Steven Maddin, the owner of Compass Financial, who was acting on behalf of K.P. and L.P., in Europe to view the artwork designated as collateral for the loan. Van Weyenbergh misrepresented to Maddin that the designated artwork was valued at approximately $7,700,000. Leo did not object to Van Weyenbergh's misrepresentation and at no time prior to November 2004 advised K.P.,

L.P. or others that Van Weyenbergh's appraisal likely contained misrepresentations. Leo subsequently provided K.P. and L.P. a written appraisal from Van Weyenbergh listing each piece of art subject to hypothecation and its replacement value. Contrary to his representations to K.P. and L.P., Leo knew at the time the letter falsely represented the artwork would be used as collateral for the loan when in fact he intended to purchase the art.

On or about March 16, 2004, Leo on behalf of Vatan, executed an agreement with Van Weyenbergh to purchase artwork for $2.035 million. On several occasions between March 25, 2004, and May 19, 2004, Leo used the Arnifi account in LLB to pay approximately $2,035,000 to Van Weyenbergh for the purpose of purchasing the artwork that he represented to K.P. and L.P. was designated as collateral for the short-term loan. At no time prior to November 2004 did Leo disclose to or otherwise inform K.P. or L.P. that he used funds from Arinfi to pay Van Weyenbergh for the artwork designated as collateral. Also, at no time did Leo disclose to or otherwise inform K.P., L.P., Maddin, or any employee of Compass Financial that Leo used Arinfi funds to purchase the artwork for himself on behalf of Vatan. Leo knew at the time that K.P. and L.P. did not want to purchase any of the artwork designated as collateral, and he had misrepresented to K.P. and L.P., and continued to misrepresent to K.P. and L.P., that their funds would be, and were, invested in a short-term loan to a museum.

On or about March 24, 2004, Leo, acting on behalf of Vatan, and also purporting

to act on behalf of K.P. and L.P. under the Power of Attorney, sold the art to K.P. and L.P. for $3,000,000. To complete the purchase, on or about April 23, 2004, and June 21, 2004, Leo transferred or caused another to transfer $965,000 from the Arinfi account in LLB to the Vatan account in LLB. At no time prior to November 2004 did Leo inform or disclose to K.P. or L.P., that he had sold the artwork to K.P. and L.P. or that he had used monies of K.P. or L.P. to fund the purchase.

In or around early May 2004, while continuing to represent to K.P., L.P., Maddin and other Compass Financial employees that the artwork was collateral for the loan and to further his scheme and artifice to defraud, Leo arranged to have the artwork shipped from Europe to Van Weyenbergh in California, and then from California to Artemis Fine Arts, in Dallas, Texas.

Over the next eight months or so, Leo knowingly and intentionally misrepresented to K.P., L.P., Maddin, and/or other Compass Financial employees that K.P. and L.P. funds in Arinfi had been used to make a short-term loan to a museum, that the museum was repaying the loan in installments, and that the loan ultimately had been repaid in full with interest. Leo showed false documents to K.P. and Compass Financial, including an altered bank statement showing that Arinfi had approximately $7,000,000 in the LLB account. In fact, at the time, the Arinfi LLB account had approximately $2,000,000, which were additional funds K.P. and L.P. had transferred to the Arinfi account from their Nova Scotia bank account.

Beginning in or around April 2004, Leo, aided and abetted by Meyer, began negotiating with Art Capital Group, a company located in New York, New York, to obtain a loan, using as collateral the artwork that he had purchased and subsequently sold to K.P. and L.P. Leo and Meyer represented to Art Capital Group that Vatan owned the art, when in fact, both Leo and Meyer knew that K.P. and L.P., through Arinfi, owned the art. On one or more occasions, for the purpose of securing the loan, Meyer corresponded with Art Capital Group by e-mail, using interstate wire communications.

To further facilitate the scheme and artifice to defraud, on or about June 29, 2004, Leo directed Artemis Fine Arts to ship the art from Dallas, Texas, to Art Capital Group in New York, New York. Leo and Meyer knowingly and intentionally misrepresented to K.P., L.P., and others that the art was being shipped back to Europe, via New York, because the short-term loan had been repaid. At no time before November 2004 did Leo or Meyer inform or disclose to K.P. or L.P. that they intended to use and were using the artwork as collateral for a loan from Art Capital Group. In fact, Leo and Meyer directed Artemis to ship the art to Art Capital Group to be used as collateral for a loan of approximately $300,000. Ultimately, after K.P. became aware of Leo's and Meyer's unauthorized use of the art to secure the loan, the proceeds of the loan did not go to Leo and Meyer's personal use.

At no time prior to ~~November~~ July 7, 2004 did Leo disclose to K.P. or L.P. that the money they had transferred to Arinfi was not going to be invested, and had not been invested, as a short-term asset-backed loan.

SIGNED and AGREED to on this the 24th day of February, 2012.

_____
EUGENIO D. LEO
Defendant

_____
GEORGE E. BECKER
Attorney for the Defendant

OFFICIAL SEAL
ELIZABETH CALDERON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/24/14

_____
for AISHA SALEEM
Assistant United States Attorney

Factual Resume (Leo) - Page 7